## M. E. JONES v. LOUIS WESSEL.

FILED APRIL 17, 1894. No. 5540.

1. **Sale**: RESCISSION OF CONTRACT. One who seeks to rescind a contract is required to place the other party *in statu quo* by returning the property received thereby within a reasonable time.

2. ———: ———: EVIDENCE. Evidence examined, and *held* not to prove a return of the property or notice of an election to rescind within a reasonable time.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

*Adams & Scott,* for plaintiff in error.

*Wooley & Gibson, contra.*

POST, J.

This was an action for the price of a mare pony purchased by Jones, the plaintiff in error, from the defendant in error Wessel. It was alleged by way of answer that by one of the conditions of the contract Wessel warranted the said pony to be kind and gentle and in all respects safe and reliable, but that she was in fact vicious and balky, and that on the discovery of her true character he, Jones, elected to rescind the said contract and immediately returned her to Wessel. The reply was a general denial. We assume the alleged warranty to have been fully established by the evidence, but upon the issue of rescission there is, we think, a failure of proof. Jones, according to his own testimony, discovered the vicious character of the pony the day of the purchase. He drove at once to the store of Wessel, where the following conversation was had: J.—" I came pretty near having a suit for damage against you. My sister and I came pretty near having our necks broken." W.—"She [referring to the pony] used to be so, but I thought she was all over it." That evening he took the pony to a livery stable, where she remained, according to his recollection, three or four days or longer; when he tied her in front of Wessel's store, from whence she was taken by the pound-master and sold for her keeping. He directed a boy who accompanied him from the livery stable to notify a man engaged in sweeping Wessel's store to notify the latter of the return of the pony. He does not claim to have personally notified Wessel of his election to rescind the contract, nor does it appear that any such

communication was made by the boy above mentioned. Wessel, on the other hand, testifies that he saw the pony in front of the store, but did not know who left her there or when she was taken to the pound. It further appears from his testimony that Mr. Pratt, keeper of the livery stable above mentioned, told him that the pony was at his stable and that Jones wanted him to go there and get her. It is a universal rule that one who seeks to rescind a contract must place the other party in *statu quo* by returning the property received within a reasonable time. (*Brown v. Waters*, 7 Neb., 424, and cases cited.) And all authorities agree that the election to rescind must be accompanied by some act which is equivalent to notice of such intention. It is not claimed that the notice to call at Pratt's stable for the pony was such a return as would entitle Jones to rescind the contract. Nor was he more fortunate in leaving the pony hitched in front of Wessel's store. That fact is of itself in nowise inconsistent with an intention to ratify the contract. It is true he sent a stranger to notify a person acting in the capacity of janitor for Wessel, but did not attempt even to prove that his message was communicated to the latter. For reasons stated the judgment of the district court is right and is

AFFIRMED.